UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
POLINA GERTSKIS,                                      :
                                                      :
                              Plaintiff,              :
                                                      :                11 Civ. 5830 (JMF)
             -v-                                      :
                                                      :                OPINION AND ORDER
UNITED STATES EQUAL EMPLOYMENT                        :
OPPORTUNITY COMMISSION *et al.*,                      :
                                                      :
                              Defendants.             :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: Mar 20, 2013

JESSE M. FURMAN, United States District Judge:

    Polina Gerskis, proceeding *pro se*, sues her former employer, the New York City

Department of Health and Mental Hygiene (the "DOHMH"); two federal agencies; several city

and federal employees; and her Unions,[1] alleging — against various combinations of Defendants

— sexual harassment, deprivation of her constitutional rights, breach of contract, "internet

harassment," and several forms of employment discrimination, in violation of a veritable

potpourri of statutes.[2] Defendants and Plaintiff have all filed motions. First, all Defendants

_____

[1]      Defendants fall into three groups. The first group is composed of New York City
defendants: the DOHMH; Thomas Farley, the Commissioner of the DOHMH; and Peter
Backman, Rose Tessler, Dorothy Wright, all employees of the DOHMH (together, the "City
Defendants"). The second group is composed of federal defendants: the United States Equal
Employment Opportunity Commission (the "EEOC"); Kevin Berry, John B. Douglass, and
Stephanie D. Garner, all employees of the EEOC (together, the "EEOC Defendants"); the United
States Department of Justice ("DOJ"); and Karen L. Ferguson and Nelson D. Hermilla, two DOJ
employees (together, the "DOJ Defendants" and, collectively with the EEOC Defendants, the
"Federal Defendants"). The third group is composed of the American Federation of State,
County & Municipal Employees, AFL-CIO, District Council 37 and Local 375, Civil Service
Technical Guild (together, the "Union Defendants"). Garner, Ferguson, Hermilla are sued only
in their official capacities. (*See* Endorsed Letter (Docket No. 34)). It is unclear whether the
other individual defendants are sued in their official or individual capacities (or both), so the
Court will address claims that may be brought against them in both capacities.

[2]      Specifically, Plaintiff brings claims under Title 42, United States Code, Sections 1981,
1982, 1983, 1985, 1988 (together, the "Civil Rights Statutes"); Title VII of the Civil Rights Act
of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the Age Discrimination in Employment

move to dismiss the operative complaint — that is, the Amended Complaint (Docket No. 4) ("Compl.") — or, in the alternative, for summary judgment, pursuant to Rules 12(b)(1) and 12(b)(6), and 56 of the Federal Rules of Civil Procedure.  Defendants invoke sovereign immunity, *res judicata* and collateral estoppel, statutes of limitations, failure to exhaust administrative remedies, and failure to state a claim, just to name a few arguments.  Second, the Federal Defendants move for summary judgment with respect to some of Plaintiffs' claims under FOIA.  Third, the Union Defendants move for an order declaring Plaintiff a vexatious litigant and barring her from filing further litigation without leave from the Court.  And finally, Plaintiff has filed two motions for leave to supplement her pleadings and to substitute the United States as a party, along with several letters seeking similar relief.

For the reasons discussed below, Defendants' motions to dismiss and for summary judgment are granted, the Union Defendants' motion for an order barring Plaintiff from filing further lawsuits is denied, and Plaintiff's motions to supplement the pleadings and to substitute the United States as a party are denied.[3]  Accordingly, the Amended Complaint is dismissed.

## BACKGROUND

In reviewing a motion to dismiss pursuant to Rule 12(b)(1) or Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (Rule 12(b)(6)); *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004) (Rule 12(b)(1)).

Act of 1967, 29 U.S.C. §§ 621-34 (the "ADEA"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290-297 (the "NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 131, 8-502 (the "NYCHRL"); and the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B) ("FOIA").

[3]     By Order dated March 14, 2013, the Court denied Plaintiff's motions to supplement and substitute "[f]or reasons that [would] be explained in a forthcoming opinion."  (Docket No. 100).

Although a court generally may not look outside the pleadings when reviewing a motion to dismiss, because a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition memoranda, as long as the allegations are consistent with the complaint. *See, e.g.*, *Braxton v. Nichols*, No. 08 Civ. 8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010); *cf. Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint). A district court reviewing a motion to dismiss may also consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits. *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (taking judicial notice of a related district court decision); *see also Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 157 (1969) ("[W]e may properly take judicial notice of the record in [a prior] litigation between the same parties who are now before us."). The present case is not the first round of litigation between Plaintiffs and Defendants. Accordingly, the following facts are drawn from Gertskis's various complaints, prior judicial opinions, as well as Plaintiff's opposition memoranda to the extent they are consistent with the Amended Complaint, and are accepted as true for the purposes of this motion.[4]

This case arises from Plaintiff's employment as an Assistant Chemist by the DOHMH from the early 1990s until August 23, 2010, when she was terminated. (Compl. ¶¶ 27, 42). Beginning in 2003, Gertskis filed numerous grievances and complaints of discrimination with the Union and the DOHMH Equal Employment Opportunity office. *See Gertskis v. N.Y.C. Dep't*

---

[4]     All parties have submitted evidence outside the pleadings and beyond matters the Court can consider on a motion to dismiss. The Court has not considered this evidence, except with respect to the Federal Defendants' motion for summary judgment on Plaintiff's FOIA claims, and to a limited extent in relation to an alternative holding discussed below.

*of Health & Mental Hygiene*, No. 07 Civ. 2235 (TPG), 2009 WL 812263, at *1-3 (S.D.N.Y. Mar. 26, 2009) ("*Gertskis I*"), *aff'd*, 375 F. App'x 138 (2d Cir. 2010) (summary order). In the period thereafter, she also began applying for senior chemist positions; despite strong performance evaluations through 2005, she was regularly denied these promotions. (Compl. ¶¶ 25-27). *See Gertskis I*, 2009 WL 812263, at *1-2. After 2005, Gertskis's evaluations declined significantly. (Compl. ¶ 28).

In June 2006, Plaintiff sought a one-year leave of absence, from July 2006 to July 2007, allegedly because she was sexually harassed by Defendant Peter Backman, the former Deputy Assistant Commissioner of the DOHMH . (Compl. 4; *id* ¶ 3). *See also Gertskis I*, 2009 WL 812263, at *3. The DOHMH granted her request. *Id.* During her leave, Plaintiff requested a transfer to another position with the City, but that request was denied. (*See* Compl. ¶¶ 10, 12). Plaintiff filed an administrative charge of discrimination with the EEOC in December 2006, and amended the charge in January 2007. *See Gertskis I*, 2009 WL 812263, at *3. In March 2007, shortly before the end of her leave, Plaintiff brought a lawsuit against many of the Defendants in the present action for employment discrimination. *See* Complaint, *Gertskis v. N.Y.C. Dep't of Health & Mental Hygiene*, No. 07 Civ. 2235 (TPG) (S.D.N.Y. Mar. 15, 2007) (Docket No. 1). Plaintiff subsequently amended that complaint, bringing various claims of harassment and discrimination against the DOHMH, Backman, and the Union Defendants. *See* Amended Complaint, *Gertskis v. N.Y.C. Dep't of Health & Mental Hygiene*, No. 07 Civ. 2235 (S.D.N.Y. Aug. 14, 2007) (Docket No. 14). Gertskis's leave of absence expired shortly after bringing her lawsuit, but she did not return to work because her request for a transfer had been denied. (Compl. ¶ 43). She maintains that she was willing to work at all times, but insisted on working at a different location. (*Id.*).

After discovery in *Gertskis I*, Plaintiff sought leave to file a second amended complaint. (Compl. ¶¶ 5-6). By opinion dated September 29, 2008, the Honorable Thomas P. Griesa, United States District Judge in this District, denied the motion to amend on the ground of futility. *See Gertskis v. N.Y.C. Dep't of Health & Mental Hygiene*, No. 07 Civ. 2235 (TPG), 2008 WL 4449285 (S.D.N.Y. Sept. 29, 2008). Approximately six months later, on March 26, 2009, the Court granted the Defendants' motions for summary judgment and terminated the case. *See Gertskis I*, 2009 WL 812263. Judge Griesa concluded that some of Plaintiff's claims were time-barred and that, for those claims that were timely, there was no evidence to support Plaintiff's claims. *See id.* at *4-8. By summary order dated April 30, 2010, the Second Circuit affirmed. *See* 375 F. App'x 138 (2d Cir. 2010). On May 31, 2011, the Supreme Court denied Gertskis's petition for the writ of *certiorari*. *See* 131 S. Ct. 2932 (2011).

Even after dismissal of *Gertskis I*, Plaintiff remained absent without leave from her job. (Compl. ¶ 43). In 2010, after Plaintiff had been absent without leave for almost three years, the DOHMH took steps to terminate her. Following a hearing conducted by the New York City Office of Administrative Trials and Hearings ("OATH"), pursuant to Section 75 of the Civil Service Law, an Administrative Law Judge ("ALJ") found that Plaintiff had been absent without leave from her job for over three years and that this misconduct justified termination. (Kessler Decl. Ex. 2, at 15-16 (Docket No. 40)). Accordingly, Plaintiff was terminated on August 23, 2010. (Compl. ¶ 42). Plaintiff contends that she was not allowed to present, examine, or cross-examine witnesses, and that she was therefore denied a fair hearing. (*Id.* ¶ 36). As the ALJ's Report and Recommendation makes clear, however, the ALJ adjourned the hearing several times to give Plaintiff an opportunity to retain counsel, engaged in extensive e-mail correspondence with her and issued explanatory rulings to guide her through the process, and held a pre-trial

conference for the express purpose of allowing her to make an offer of proof with respect to the witnesses she intended to call.  (*See* Kessler Decl. Ex. 2 at 2-10).

On June 8, 2011, Plaintiff filed two administrative charges of discrimination with the EEOC, alleging discriminatory and retaliatory termination in violation of Title VII as well as a "conspiracy" between the DOHMH and the Union.  (Compl. ¶ 45).  Plaintiff received Notice of Right to Sue ("NRTS") letters, thus closing those charges, on June 24, 2011.  (*Id.*).  Plaintiff claims she discovered new evidence of race and age discrimination on July 20, 2011, and that she attempted to amend her June 8, 2011 charges with the new information on July 26, 2011.  (*Id.* ¶ 46).  Defendant Douglass, a Supervisory Investigator at the EEOC, refused to allow Plaintiff to amend her charges, however, on the ground that they were closed and, instead, opened a new set of charges.  (*Id.* ¶¶ 47-48, 50; *see* Garner Decl. Ex. 23).  Plaintiff repeatedly requested that her July 26, 2011 charges be treated as amendments to the June 8, 2011 charges, and related back to them, as she claims had happened with her prior EEOC submissions.  (Compl. ¶¶ 49-53).  But Plaintiff ultimately received separate NRTS letters for the July 26, 2011 charges.  (*Id.* ¶ 54).

In addition to these administrative charges of discrimination, Plaintiff filed several FOIA requests, seeking information from the EEOC about her various administrative charges, the EEOC's procedures, and the EEOC's actions on her charges.  (*Id.* ¶¶ 54, 69).  Plaintiff claims that several FOIA charges were disregarded entirely and that others were denied in violation of her FOIA, due process, equal protection, and Title VII rights, not to mention the EEOC's own regulations.  (*Id.* ¶¶ 54-59).  The EEOC did give Plaintiff some responsive documents, however, and supplemented its disclosures after Plaintiff appealed administratively and the EEOC

reviewed the materials further. (*Id.* ¶¶ 58, 65-67). Plaintiff describes these responses as "meaningless" and alleges that they are incomplete. (*Id.* ¶¶ 58, 65).

Finally, to the extent relevant here, Plaintiff also submitted requests for information to DOJ FOIA office in mid-2011. (*Id.* ¶ 60). Plaintiff received responsive documents from DOJ, which she claims were incomplete and "concealed" all of her "major claims." (*Id.* ¶¶ 60-62). Plaintiff further alleges that Defendant Hermilla, the Chief of the FOIA/Privacy Acts Branch of the Civil Rights Division of DOJ, "refused to refer [her] to DOJ reading room or to produce DOJ Civil Rights Division policies and regulation compliance manual for action DOJ must follow with the EEOC referred charges and regulations." (*Id.* ¶ 62; *see also* Hermilla Decl. ¶ 1). Plaintiff alleges a conspiracy between Defendants Garner and Hermilla to produce "shady documents" that covered up the EEOC's mishandling of her administrative charges. (Compl. ¶¶ 63-64).

## LEGAL STANDARDS

As noted, Defendants move for dismissal or summary judgment pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure. The legal standards applicable to each of these Rules are well established.

### 1. Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction to hear the case. "A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)), *aff'd on other grounds,* 133 S. Ct. 721 (2013). To survive a motion to dismiss under Rule 12(b)(1), "jurisdiction must be shown affirmatively, and that showing is not

made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 130 S. Ct. 2869 (2010) (citations and internal quotation marks omitted). Moreover, a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir. 2004). "'The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.'" *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

## 2. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a plaintiff must generally plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.[5]

---

[5]     *Twombly* and *Iqbal* notwithstanding, the Supreme Court has held that, to survive a motion to dismiss, "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Twombly*, 550 U.S. at 569 (quoting

Even under the heightened pleading standards set by *Iqbal* and *Twombly*, a court is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Thus, when considering *pro se* submissions, a court must interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). Nevertheless, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Bodley v. Clark*, No. 11 Civ. 8955 (KBF), 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("[P]*ro se* complaints must contain sufficient factual allegations to meet the plausibility standard . . . .").

### 3. Rule 56

Finally, summary judgment is appropriate when the record demonstrates that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and

---

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Even if that holding survives *Twombly* and *Iqbal*, the elements of a prima facie case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett v. City of New York*, No. 09 Civ. 5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011). Accordingly, "courts consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10-CV-0251 (LDW) (AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011).

admissions on file, that demonstrate the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322. In ruling on a motion for summary judgment, a court must view "'all the evidence in the light most favorable to the non-movant and draw[] all reasonable inferences in that party's favor.'" *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 113 (2d Cir. 2011) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).

It is well established that the "special solicitude" afforded to *pro se* litigants extends to the opposition to a motion for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to raise the strongest arguments that they suggest. *See, e.g.*, *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011). This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation mark omitted). Nor is the "duty to liberally construe a plaintiff's [opposition] . . . equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1] [b], at 12-61 (internal quotation marks omitted)).

## DISCUSSION

Plaintiff's Amended Complaint makes a wide range of allegations in a confusing and disorganized fashion. Although certain claims are directly alleged, the full scope of allegations that Plaintiff makes against any specific Defendant and, conversely, the full list of Defendants against whom certain allegations are made, are often unclear. Construing Plaintiff's complaint liberally, as the Court must, the Court will consider all of the possible claims Plaintiff may be

alleging against each group of Defendants, beginning with her claims against the City

Defendants and Union Defendants.

## A. The City Defendants' and Union Defendants' Motions

The core of Plaintiff's case concerns the treatment she allegedly received during her

employment at the DOHMH and the circumstances surrounding her termination. The former set

of claims were adjudicated in *Gertskis I* and thus are largely barred by *res judicata*; to the extent

they are not, they are time barred. With respect to the latter claims, the Amended Complaint

fails to state a claim or is precluded by the prior state administrative proceedings.

### 1. Claims Arising from Plaintiff's Active Employment at the DOHMH

First, Gertskis raises a series of claims relating to her employment at the DOHMH, which

effectively ended when she took leave in July 2006. (*See, e.g.*, Compl. ¶¶ 3-5, 7, 9-13, 15-21).

The City Defendants and Union Defendants move to dismiss these claims either on the ground

that they are precluded by *Gertskis I* or time barred. (Union Defs.' Mem. of Law 8-13; City

Defs.' Mem. of Law 6-12). It is "[a] fundamental precept" of law "that a 'right, question or fact

distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be

disputed in a subsequent suit between the same parties or their privies.'" *Montana v. United

States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49

(1897)). This idea is embodied in the "related but distinct doctrines" of *res judicata* and

collateral estoppel. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Under

the former, a "final judgment on the merits of an action precludes the parties or their privies from

relitigating issues that were or could have been raised in that action." *EDP Med. Computer Sys.,

Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks omitted). More

specifically, the doctrine of *res judicata* "applies in later litigation if an earlier decision was (1) a

final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221-22 (2d Cir. 2012) (quoting *In re Adelphia Recovery Trust*, 634 F.3d 678, 694 (2d Cir. 2011)). Significantly, where it applies, the doctrine precludes not only those claims that were raised in the prior action, but also those involving the same transaction or connected series of transactions that "could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *see also, e.g.*, *Legnani v. Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139, 141 (2d Cir. 2005).

Applying these principles here, all of Gertskis claims arising from her employment at the DOHMH — except perhaps for those brought against the City Defendants in their individual capacity — are plainly precluded. First, *Gertskis I* was resolved by a final judgment on the merits by a court of competent jurisdiction, as Judge Griesa of this Court granted the Defendants' motion for summary judgment. *See Gertskis I*, 2009 WL 812263; *see also Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 352 n.9 (E.D.N.Y. 2010) ("Summary judgment dismissal is considered a decision on the merits for *res judicata* purposes."). Second, all of the Union Defendants and the City Defendants were either parties to the first lawsuit (namely, the DOHMH, Peter Backman, and the Union Defendants) or, to the extent they are being sued in their official capacities, are in privity with those parties. *See John St. Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 283 F.3d 73, 75 (2d Cir. 2002) (holding that, for *res judicata* purposes, FDIC employees sued in their official capacities were in privity with employer named in prior suit); *see also Dellutri v. Vill. of Elmsford*, — F. Supp. 2d. —, No. 10 Civ. 1212 (KMK), 2012 WL 4473268, at *3-4 (S.D.N.Y. Sept. 28, 2012) (quoting *Muhammad v. City of Peekskill*, 06 Civ. 1899 (KMK), 2008 WL 4452355, at *3 (S.D.N.Y. Sept. 30, 2008). Finally, Plaintiff's claims

involve the same cause of action. In fact, many of Plaintiff's claims in this suit are identical to those she pressed in *Gertskis I*. To the extent that she brings new claims (for example, under the ADEA and Title 42, United States Code, Sections 1982 and 1985), there is no reason she could not have raised them in *Gertskis I*. Accordingly, *res judicata* precludes relitigation of these claims. *See, e.g.*, *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir. 2008).

As noted, Plaintiff's claims against the City Defendants in their individual capacities are arguably not barred by *res judicata*. *See, e.g.*, *Stancuna v. Sherman*, 563 F. Supp. 2d 349, 353 (D. Conn. 2008) (collecting cases); *see also* 18 Moore's Federal Practice § 131.40[3][e][ii][A] (3d ed.) ("A government official sued in his or her personal capacity is not considered in privity with the government."). To the extent that these or any other claims arising from her employment at the DOHMH are not precluded, however, they are time barred. The statute of limitations for most of Gertskis's claims is three years. *See, e.g.*, *Harrison v. Harlem Hosp.*, 364 F. App'x 686, 688 (2d Cir. 2010) (summary order) (Civil Rights Statutes); N.Y. C.P.L.R. § 214(2) (NYSHRL); N.Y.C. Admin. Code § 8-502(d) (NYCHRL). At most, she may have had four years to bring some of her claims. *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382-83 (2004) (finding that at least some employment discrimination claims brought pursuant to Section 1981 are subject to the four-year statute of limitations in Title 28, United States Code, Section 1658). But whether she had three or four years, she waited too long. As Plaintiff took leave from the DOHMH in July 2006 and never came back, her claims relating to her employment there had to be brought no later than July 2010. Yet she did not file the initial complaint in this case until August 19, 2011. Therefore, to the extent that Plaintiff's claims

relating to her active period of employment at the DOHMH are not precluded by *res judicata*, they are untimely. Either way, they must be dismissed.[6]

### 2. Claims Relating to Plaintiff's Termination

Next, Plaintiff's Amended Complaint, liberally construed, alleges a series of claims surrounding her termination. The Amended Complaint can be construed to raise claims for both discriminatory and retaliatory termination under Title VII and the ADEA, as well as claims under the Civil Rights Statutes.

### a. Race and Age Discrimination Under Title VII and the ADEA

At the outset, the City Defendants move to dismiss Plaintiff's claims under Title VII and the ADEA for race and age discrimination for failure to exhaust administrative remedies. In New York, a Plaintiff under Title VII or the ADEA must file a charge with an administrative body within 300 days of her termination. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1). In the present case, Plaintiff was fired on August 23, 2010, meaning that any charge relating to her termination would have to have been filed by June 20, 2011. Although she did file a charge alleging retaliatory termination and conspiracy within that time — on June 8, 2011 (Compl. ¶ 45) — that charge said absolutely nothing about race or age discrimination claims, as Plaintiff admits (Compl. ¶ 46). Plaintiff did eventually file a charge with respect to those claims, but it was not until July 26, 2011, after the deadline. (Compl. ¶ 46; Pl.'s Opp'n to City Defs. 21).

---

[6]     In the Amended Complaint, Plaintiff cites the fact that, in 2007, the Unemployment Insurance Appeal Board awarded her unemployment benefits in an uncontested proceeding and found that she had quit her job with "good cause." (Compl. ¶¶ 18-20, 72). Plaintiff appears to argue that the Board's finding is controlling evidence of discrimination and animus by the City (and perhaps the Union Defendants), which Judge Griesa ignored in *Gertskis I* and, thus, that she is entitled to relief pursuant to New York Labor Law Section 623. Putting aside the fact that these arguments fail for the reasons stated above, Section 623(2) provides expressly that courts are not bound by decisions of the Unemployment Insurance Appeal Board.

Accordingly, Plaintiff failed to exhaust her administrative remedies, and her federal claims for race and age discrimination are barred.[7]

In any event, Plaintiff fails to state a claim of race and age discrimination under Title VII, the ADEA, the NYSHRL, or the NYCHRL.  To establish a prima facie case of age or race discrimination under these statutes, a plaintiff must prove that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 & n.1 (2d Cir. 2009) (describing the framework for age discrimination claims under Title VII, the ADEA, the NYSHRL and the NYCHRL); *see Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (applying the same standard for race discrimination claims under Title VII); *see also Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714-15 (2d Cir. 1996) (applying the Title VII analytical framework for discrimination claims to Sections 1981 and 1983 and the NYSHRL).

Here, Plaintiff's claims are conclusory and devoid of factual content creating a plausible inference of any discriminatory conduct.  The only mention of age or race discrimination in Plaintiff's amended complaint is a reference to unspecified "additional evidence of discriminatory terminations and involuntary transfers of my similarly situated white aged former coworkers."  (Compl. ¶ 46).  In her opposition, Plaintiff makes unsupported references to

---

[7]     Plaintiff does not contend, and there is no basis on this record to find, that her race and age discrimination claims were "reasonably related" to those alleged in the June 8, 2011 charge. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001) (explaining that unexhausted claims that are "reasonably related" to those in a filed EEOC charge are considered "exhausted" for the purposes of a Title VII lawsuit).  She does suggest that her race discrimination claims were reasonably related to the claims made in her 2007 charges to the EEOC (*see* Pl.'s Opp'n to City Defs. 21), but Plaintiff was required to bring any suit relating to those claims within ninety days of receiving NRTS letters, *see* 42 U.S.C. § 2000e-5(f)(1).  She did not.

employment actions surrounding various individuals employed at the DOHMH, but provides no facts to raise any inference that the decisions were motivated by age or race discrimination. (Pl.'s Opp'n to City Defs. 24-25). Accordingly, to the extent that Plaintiff's claims for discrimination on the basis of race or age are not barred because of her failure to exhaust her administrative remedies, they are dismissed for failure to state a claim. *See, e.g.*, *Coleman v. brokersXpress, LLC*, No. 08 Civ. 5085 (SAS), 2008 WL 4778675, at *3 (S.D.N.Y. Oct. 31, 2008) (dismissing conclusory claim); *Dean v. Westchester Cnty. Dist. Attorney's Office*, 119 F. Supp. 2d 424, 429-31 (S.D.N.Y. 2000) (same); *Gibson v. Jacob K. Javits Convention Ctr. of N.Y.*, No. 95 Civ. 9728 (LAP), 1998 WL 132796, at *7-8 (S.D.N.Y. Mar. 23, 1998) (same); *cf. Lans v. Kiska Const. Corp.*, No. 96 Civ. 4114 (KMW) (AJP), 1997 WL 313162, at *2 (S.D.N.Y. Apr. 18, 1997) ("A plaintiff cannot survive a motion to dismiss merely by stating conclusory allegations in the complaint.").

### b. Retaliation

Next, the City Defendants move to dismiss for failure to state a claim or for summary judgment on Plaintiff's Title VII and ADEA retaliation claims relating to her termination. To establish a prima facie case of retaliation under Title VII or the ADEA, "an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06, 207-10 (2d Cir. 2006) (applying the same standard to Title VII and ADEA)). Here, Plaintiff satisfies the first three prongs, but the Amended Complaint is devoid of any factual allegations that would support a plausible conclusion that there was a causal connection between her

protected activity (namely, her prior lawsuit and her various discrimination complaints) and her termination.

Moreover, the record makes clear that Plaintiff was terminated, after a full and fair OATH hearing, as a result of her failure to return to work for more than four years. The ALJ at the hearing found that the evidence was undisputed that Plaintiff was continuously absent without leave from the DOHMH from July 9, 2007, the date her leave of absence expired, and therefore recommended termination. (Kessler Decl. Ex. 2 at 15). That decision, after a full and fair hearing, is entitled to substantial (but not conclusive) weight here. *See, e.g.*, *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 115 (2d Cir. 2002) ("Where an employee's ultimate termination depends upon, and is allowed by, a decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing, the . . . decision has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive.").[8] In contending otherwise, Plaintiff asserts that the OATH hearing was unfair, as she was not allowed to present evidence and witnesses. (Compl. ¶¶ 36-39, 41). That assertion, however, is belied by the ALJ's own Report and Recommendation, which reveals that the ALJ

_____

[8]     The Court may take judicial notice of the transcript of the OATH hearing without converting Defendants' motions to dismiss into motions for summary judgment. *See, e.g.*, *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) ("[T]he Court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." (internal quotation marks omitted)). In the alternative, to the extent the OATH hearing is relevant, the Court may convert Defendants' motions into motions for summary judgment, as Defendants served Plaintiff with Local Rule 12.1 Notices (*see* Docket Nos. 29, 42, 49, 61), alerting her that the Court might convert their motions into summary judgment motions and that she could submit evidence. *See, e.g.*, *Hernandez v. Coffey*, 582 F.3d 303, 308 n.2 (2d Cir. 2009) (citing cases finding that a Local Rule 12.1 Notice provides sufficient notice to *pro se* parties). In fact, Plaintiff herself submitted hundreds of pages of supporting exhibits to her various opposition briefs and motions to supplement, indicating that she was aware of and understood the requirements for opposing a motion for summary judgment.

went to great lengths to accommodate Plaintiff despite her combativeness and lack of cooperation. Although Plaintiff repeatedly refused to participate in the proceedings and failed to appear at several scheduled conferences, the ALJ adjourned the hearing several times to give her an opportunity to retain counsel, engaged in extensive e-mail correspondence with her and issued explanatory rulings to guide her through the process, and held a pre-trial conference for the express purpose of allowing her to make an offer of proof with respect to the witnesses she intended to call. (*See* Kessler Decl. Ex. 2 at 2-15).

### c. Section 1981 and 1983 Claims

The City Defendants also move to dismiss Plaintiff's termination-related claims against them pursuant to Sections 1981 and 1983. Plaintiff appears to allege, pursuant to these provisions, that the City Defendants violated her rights to equal protection and due process. Any equal protection claim fails, however, in light of the ALJ's factual finding, referenced above, that Gertskis was justifiably terminated because she was absent without leave for three years. *See, e.g.*, *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 312 (2d Cir. 2005) (noting that, unlike in Title VII or ADEA proceedings where such findings are given only substantial weight, in actions pursuant to Sections 1981 and 1983, "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts," and that "New York courts will give administrative determinations preclusive effect if made in a quasi-judicial capacity and with a full and fair opportunity to litigate the issue").[9]

---

[9]     The EEOC is required, by the plain language of Title VII, to give "substantial weight to final findings and orders made by State or local authorities in proceedings commenced under

To be sure, that finding does not preclude litigation of Plaintiff's claims as a categorical matter. *See, e.g.*, *Burkybile*, 411 F.3d at 313; *see also, e.g.*, *Cortes v. City of N.Y.*, 700 F. Supp. 2d 474, 486 (S.D.N.Y. 2010) (finding that neither issue nor claim preclusion applied to a state administrative proceeding where the plaintiff's claim for relief could not have been decided in the proceeding and relief could not have been granted). But where, as here, the state administrative proceeding determined "whether [plaintiff] was subjected to adverse employment actions because of [her] own conduct or because of other factors, such as impermissible discrimination by defendants," a factual finding that it was due to her own conduct has preclusive effect on a plaintiff's ability to bring a claim for employment discrimination. *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 580 (S.D.N.Y. 2011) (holding that a state administrative hearing finding just cause for termination precluded the plaintiff's ADEA and Americans with Disability Act claims).[10]

Plaintiff's due process claims fail, on the other hand, because she failed to take advantage of post-deprivation procedural remedies under New York law (namely, an action pursuant to Article 78 of the New York Civil Practice Law and Rules). That is, where, as in this case,

State or local [employment discrimination] law." 42 U.S.C. § 2000e-5(b). The Supreme Court has held that federal courts deciding claims under Title VII must accord the same level of deference to state administrative proceedings, and has extended that principle to the ADEA given its similar system of administrative review. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 795 (1986) (Title VII); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110 (1991) (ADEA). By contrast, the Supreme Court has held that standard preclusion rules apply to claims brought under Sections 1981 and 1983, so factual findings of a quasi-judicial state administrative body are accorded preclusive effect in that context. *See Elliott*, 478 U.S. at 796-99.

[10]     Moreover, even if Plaintiff could demonstrate that illegal discrimination was a "motivating factor" in her termination, she could not obtain the monetary damages and reinstatement order she seeks, as the City has "demonstrat[ed] that [it] would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B).

"Article 78 gave a meaningful opportunity to challenge the alleged unlawful termination Plaintiff was not deprived of due process simply because she failed to avail herself of the opportunity." *LaRue v. N.Y.C. Off-Track Betting Corp.*, No. 03 Civ. 0783 (RMB), 2004 WL 2793195 (S.D.N.Y. Dec. 6, 2004) (internal quotation marks, brackets, and ellipses omitted); *see id.* ("When the claim is based on random unauthorized acts by state employees, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post-deprivation remedy." (internal quotation marks omitted)).[11]

### d. Remaining Claims Against the City Defendants

Plaintiff's Amended Complaint presses a variety of other claims against the City Defendants, including a claim under Section 1982, which prohibits racial discrimination with respect to the right to inherit, purchase, lease, sell, hold, and convey real and personal property (Compl. 2, 4); a claim of conspiracy pursuant to Section 1985 (*id.* ¶ 45; Pl.'s Opp'n to City Defs. 24-25); a claim of internet harassment (Compl. ¶¶ 1(c), 2; Pl.'s Opp'n to City Defs. 3, 17); and claims of discrimination relating to her application for various new jobs since her leave of absence began (Compl. ¶ 21). To the extent there are any allegations in the Amended Complaint supporting these claims at all, however, they are entirely conclusory and therefore insufficient to state a claim. *See, e.g.*, *brokersXpress, LLC*, 2008 WL 4778675, at *3.

---

[11]    Even if Plaintiff's claims were not precluded by the OATH proceedings and her failure to take advantage of state procedural remedies, the Section 1981 and 1983 claims against the DOHMH and the individual defendants in their official capacities would still fail, as Plaintiff has failed to allege a municipal policy that caused the violation of any of her constitutional rights, as is required under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-95 (1978). *See, e.g.*, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989) (holding that a plaintiff must satisfy the *Monell* rule to state a Section 1981 claim against a municipality).

###### e. Remaining Claims Against the Union Defendants

Plaintiff's final termination-related claims are brought against the Union Defendants. Construed (very) liberally, her Amended Complaint appears to allege two claims: first, a claim for breach of the Union's duty of fair representation, under Title VII or New York State law. (Compl. ¶¶ 22, 40; *see also* Pl.'s Opp'n to Union Defs. 24); and, second, a Title VII violation based on the Union's conduct in condoning the DOHMH's discriminatory behavior (by conspiring to keep her out of work and refusing to represent her). The only references to the Union Defendants in the Amended Complaint that relate to Plaintiff's termination, however, are that "[m]y former Governmental Employer and Union conspired to deprive me of my Civil Service position by holding me in the involuntary 'leave of absence' with intention to terminate," and that the "Union did not showed up on the termination hearing and refused to provide an attorney to help me with my respond to the Commissioner against the unlawful termination [sic]." (Compl. ¶¶ 22, 40). These allegations are plainly insufficient to state a plausible claim against the Union Defendants. *See, e.g.*, *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 689 (S.D.N.Y. 2007) (dismissing a claim for breach of duty of representation on the basis of vague and conclusory pleadings of conspiracy and union wrongdoing).

In any event, these claims are subject to dismissal for other reasons. First, they are untimely. Where, as here, a plaintiff alleges claims under both Title VII and New York State law for breach of the duty of fair representation, the plaintiff must file a charge with the EEOC within 300 days of the alleged breach. *See Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998); 42 U.S.C. § 2000e-5(e)(1). In this case, the latest that Plaintiff could have learned of the Union's alleged breach was May 4, 2010, when the Union declined to represent her in connection with the termination proceedings. But Plaintiff did not file a

complaint with the EEOC until June 8, 2011, well more than 300 days later.  Second, to state a claim that the Union Defendants unlawfully condoned the DOHMH's discriminatory behavior, Plaintiff would have to have a valid claim of discrimination against her former employer.  *See, e.g.*, *Nweke*, 25 F. Supp. 2d at 224, 230.  It follows from the fact that she does not have a valid claim against the DOHMH that her claim against the Union Defendants also fails.

## B.  The Federal Defendants' Motions

Plaintiff brings several constitutional and tort claims against the Federal Defendants, as well as claims under FOIA relating to the processing of her various applications.  Plaintiff's constitutional and constitutional tort claims are barred by sovereign immunity.  Plaintiff's non-constitutional tort claims and FOIA claims against DOJ are barred for failure to exhaust available administrative remedies.  Lastly, Defendants are entitled to summary judgment on Plaintiff's FOIA claims against the EEOC Defendants.

### 1.  Non-FOIA Claims

First, Plaintiff alleges various statutory and constitutional claims against the EEOC and against Berry and Douglass in their official capacities based upon the processing of her administrative charges.  (Compl at 1-3; *id.* ¶¶ 52-56).  Sovereign immunity, however, "shields the federal government and its agencies from suit" absent an express Congressional waiver.  *Diaz v. United States*, 517 F.3d 608, 611 (2d Cir. 2008) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  In fact, the protection from suit offered by sovereign immunity is not just a ground for dismissal, but is a jurisdictional bar.  *See, e.g.*, *Meyer*, 510 U.S. at 475.  The protection extends to federal agencies and federal officers acting in their official capacities,

because a suit against either type of party is "essentially a suit against the United States." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Congress is the only entity able to waive federal sovereign immunity, and courts may not find waivers unless they are "unequivocally expressed." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992) (internal quotation marks omitted). Plaintiff bears the burden of proving by a preponderance of the evidence that Congress has waived sovereign immunity. *See, e.g.*, *Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004).

Applying these principles here, Plaintiff's claims against the EEOC and against Berry and Douglass in their official capacities must be dismissed for lack of jurisdiction. Indeed, "[c]ourts have repeatedly held that the United States has not waived sovereign immunity for suits against the EEOC based on the EEOC's handling of an employment discrimination charge." *McKoy v. Potter*, No. 08 Civ. 9428 (PKC), 2009 WL 1110692, at *5 (S.D.N.Y. Apr. 21, 2009); *see also Baba v. Japan Travel Bureau Int'l, Inc.*, 111 F.3d 2, 6 (2d Cir. 1997) (per curiam) ("We therefore hold that Title VII provides no express or implied cause of action against the EEOC for claims that the EEOC failed properly to investigate or process an employment discrimination charge."); *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) (holding that the United States has sovereign immunity with respect to constitutional tort claims). Accordingly, the Court lacks jurisdiction over these claims.

Plaintiff's constitutional claims against Berry and Douglass in their individual capacities are not barred by sovereign immunity, but they fail for another reason. Specifically, although federal officers may be sued for certain constitutional violations in their individual capacities, *see generally Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), an EEOC employee's alleged mishandling of an employment discrimination charge

does not give rise to such a claim. As one court in this district explained, "even an arbitrary and capricious denial of the investigative and conciliatory benefits the EEOC can provide to a charging party does not transgress the Due Process Clause in a way that would support the implication of a *Bivens*-type damage remedy." *Caraveo v. Nielsen Media Research, Inc.*, No. 01 Civ. 9609 (LBS) (RLE), 2003 WL 169767, at *11 (S.D.N.Y. Jan. 22) (internal quotation marks and brackets omitted), *report and recommendation adopted as to this holding by Caraveo v. Nielsen Media Research, Inc.*, No. 01 Civ. 9609 (LBS) (RLE), 2003 WL 1745064 (S.D.N.Y. Mar. 31, 2003), *aff'd sub nom. Caraveo v. U.S. E.E.O.C.*, 96 F. App'x 738 (2d Cir. 2004).

In any event, even if there were jurisdiction or Plaintiff could bring a *Bivens* action, Plaintiff fails to allege that the EEOC's policies are facially discriminatory, that they have an unintended discriminatory effect, or that she was treated differently than a similarly situated person, as would be required to state an equal protection claim. *See, e.g.*, *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000) (discussing various methods of stating a claim for an equal protection clause violation). And, as for her due process claim, "where, as here, a Right to Sue letter has been issued and Plaintiff had the opportunity to pursue [her] underlying discrimination claim in federal court, there cannot be a colorable claim for denial of due process in connection with the agency proceedings." *Marshall v. Nat'l Ass'n of Letter Carriers BR36*, No. 03 Civ. 1361 (LTS), 2004 WL 2202574, at *2 (S.D.N.Y. Sept. 30, 2004).

Finally, Plaintiff's amended complaint could also be construed as alleging common law tort claims against the Federal Defendants. Pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2678, 2680, however, "a suit against the United States is the exclusive remedy for a suit for damages for injury or loss of property 'resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of

his office or employment.'" *Zandstra v. Cross*, No. 10 Civ. 5143 (DLC), 2012 WL 383854, at *2 (S.D.N.Y. Feb. 6, 2012) (quoting *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991), and 28 U.S.C. § 2679(b)(1)). Accordingly, suits against federal agencies and employees for tort claims are precluded, and the United States must be substituted as the proper party upon certification by the Attorney General that the defendants were acting within the scope of their office or employment at the time the claim arose. *See* 28 U.S.C. § 2679(a), (d). Here, the Federal Defendants' brief may serve as such a certification. (Fed. Defs.' Mem. of Law 23). *See Bamba v. U.S. Dep't of Homeland Sec.*, No. 11 Civ. 7466 (DLC), 2012 WL 3020034, at *4 (S.D.N.Y. July 24, 2012) (noting that a brief filed by the United States on behalf of named defendants may serve as a petition to certify that they were employees acting within the scope of their employment).

There is no need, however, to formally substitute the United States as a party this case (as Plaintiff requests (Docket No. 80)), because the claims are subject to dismissal for failure to exhaust administrative remedies in any event. The FTCA operates as a limited waiver of sovereign immunity for certain tortuous conduct. To take advantage of this waiver, however, a claimant must have "first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). Failure to follow the exhaustion requirement deprives a court of jurisdiction to hear the claim. *See, e.g.*, *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999). Here, there is no indication, let alone evidence, that Plaintiff filed a tort claim with either the EEOC or DOJ. Accordingly, Plaintiff's claims, even if construed as FTCA claims properly brought against the United States, must be dismissed.

## 2. FOIA Claims

Plaintiff also brings various claims under FOIA.  As an initial matter, Plaintiff's FOIA claims against DOJ, Hermilla, and Ferguson are easily dismissed because she failed to exhaust her administrative remedies prior to filing this lawsuit.  Plaintiff contends that she did file an appeal from the denial of her FOIA requests to DOJ (Pl.'s Opp'n to Fed. Defs.' 16-17), and attaches a letter dated November 10, 2011 (Aff. of Polina Gertskis in Opp'n to Fed. Defs.' Mot. to Dismiss Ex. A-2).  This letter, however, is directed to the Office of Legal Counsel for FOIA Programs at the EEOC.  As DOJ regulations require an appeal to DOJ's Office of Information and Privacy, *see* 28 C.F.R. § 16.9, and the EEOC is a different agency from DOJ, it follows that an appeal to the head of the EEOC is insufficient to exhaust administrative remedies for purposes of filing a lawsuit against DOJ or DOJ officials.  Accordingly, Plaintiff's FOIA claims against the DOJ Defendants are dismissed for failure to exhaust.

Plaintiff did exhaust her FOIA claims with respect to the EEOC, but they are without merit.  FOIA generally favors disclosure, and requires the production of records in response to a request, unless the records meet one of the nine statutory exemptions.  *See* 5 U.S.C. § 552(a)(3), (b); *see also Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) ("[D]isclosure, not secrecy, is the dominant objective of the Act.").  The burden of demonstrating that a statutory exemption applies rests with the agency withholding responsive documents.  *See Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012).  A court need not authorize discovery on FOIA claims, however, and may award summary judgment based upon the agency affidavits. *See id.*; *see also Amnesty Int'l USA v. C.I.A.*, No. 07 Civ. 5435 (LAP), 2008 WL 2519908, at *8 (S.D.N.Y. June 19, 2008) ("Summary judgment is the preferred procedural vehicle for resolving FOIA disputes.").  To satisfy that burden, the agency need only submit "[a]ffidavits or

declarations" that demonstrate (1) that the agency "has conducted a thorough search," and (2) "giving reasonably detailed explanations why any withheld documents fall within an exemption." *Long*, 692 F.3d at 190-91 (quoting *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)). Moreover, these affidavits or declarations are "accorded a presumption of good faith." *Id.* at 191 (quoting *Carney*, 19 F.3d at 812).

The Federal Defendants have satisfied their burden in this case through the declarations of Hermilla and Garner. (Docket Nos. 62, 63). First, these declarations demonstrate that the agencies conducted a thorough search. Garner's declaration, for example, spells out in some detail the procedures employed to search for documents responsive to each of Plaintiff's FOIA requests. (*See* Garner Decl. ¶¶ 9-19). As stated therein, the EEOC searched for documents responsive to Plaintiff's requests for information about her charge files and provided that information. (*Id.* ¶ 9). In addition, the EEOC responded to Plaintiff's various appeals by disclosing additional information, and conducted a third reconsideration of its determinations, ultimately disclosing almost all the information sought by Plaintiff. (*Id.* ¶¶ 10-11, 16-17). Significantly, to satisfy its burden, an agency's search "need not be perfect, but rather need only be reasonable." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). Here, the declarations describe "in reasonable detail the scope and method by which the search was conducted." *Natural Res. Def. Council, Inc. v. Wright-Patterson Air Force Base*, No. 10 Civ. 3400 (SHS), 2011 WL 3367747, at *5 (S.D.N.Y. Aug. 3, 2011) (quoting *Maynard v. C.I.A.*, 986 F.2d 547, 559 (1st Cir. 1993)). That satisfies the Federal Defendants' initial burden.

As for the second consideration, the EEOC justifiably withheld certain information pursuant to the fifth FOIA exemption, which protects from disclosure inter- or intra-agency documents "reflecting advisory opinions, recommendations and deliberations comprising part of

a process by which governmental decisions and policies are formulated." *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012) (quoting *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 150 (1975) (internal quotation mark omitted)).  A document may be withheld under this exemption if it is "(1) 'predecisional,' *i.e.,* 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and (2) 'deliberative,' *i.e.,* 'actually . . . related to the process by which policies are formulated.'" *Id.* (quoting *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005)).  That is the case here.  Specifically, the EEOC withheld three words from two recommendation memoranda and language in two sections of four assessment forms.  (Garner Decl. ¶ 20).  These documents were prepared by the EEOC investigator assigned to the charges and are addressed to her supervisor.  (*Id.*).  The investigator also prepared memoranda at the conclusion of the investigation containing an evaluation of the charge and a recommended determination.  (*Id.*).  The supervisor, and ultimately the Director of the EEOC, make the final determination on the charge based on the investigator's memorandum and the file.  (*Id.*).  Accordingly, the memoranda and forms are plainly predecisional and, insofar as they include the investigator's analysis and recommendation, are deliberative.  They are therefore exempt from disclosure.

## C.  Plaintiff's Motions to Supplement

After Defendants' motions to dismiss were fully briefed, Plaintiff filed a motion for leave to supplement her complaint (Docket No. 80), an amended motion to supplement (Docket No. 93), as well as several letter requests of a similar nature, and an additional affirmation and memorandum of law in support of her motions to supplement.  (Docket Nos. 82, 89, 91-92, 96-97, 99).  Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nevertheless,

a court has discretion to deny a motion to amend where "there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). An amendment is "futile" when it could not withstand a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (stating that "[l]eave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted" (citations omitted)).

In this case, amendment would be futile. The vast majority of Plaintiff's new or repleaded claims suffer from one or more of the flaws discussed above with respect to the claims in her Amended Complaint. For example, Plaintiff seeks to replead: (1) various claims of discrimination relating to her period of active employment at the DOHMH, which are precluded by *res judicata*; (2) sex and national origin discriminatory termination claims, which are untimely; (3) her Section 1983 claims, which fail in light of the ALJ's factual findings at the OATH hearing; (4) her FTCA claims against the United States, which are unexhausted; and (5) her claims with respect to the EEOC's handling of her complaints, which are barred by sovereign immunity.[12] To the extent Plaintiff seeks to bring new claims, they are similarly deficient. For example, Plaintiff seeks to allege new claims against the City based on its responses to her FOIL requests. (Pl.'s Mot. to Supp. 4 (Docket No. 80)).[13] But this Court lacks jurisdiction over Plaintiff's state-law FOIL claims, as they do not arise out of the same case or controversy as her

---

[12] To the extent Plaintiff attacks Judge Griesa's decision in *Gerstkis I*, her motions could be construed to be seeking relief from the judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Suffice it to say, there is no basis for relief pursuant to that Rule in this case.

[13] There is no consistent numbering scheme among the documents that comprise Plaintiff's Motion to Supplement. For ease of reference, citations are to the page number of the document as numbered on the Court's Case Management/Electronic Case Filing (CM/ECF) system.

employment discrimination claims against the City.  *See* 28 U.S.C. § 1367(a).

The closest Plaintiff comes to a valid claim (for purposes of being granted leave to amend) is in alleging discrimination for failure to hire her for various job openings to which she has applied since her initial complaint.  (*See, e.g.*, Pl.'s Amend. Mot. to Supp. ¶¶ 15-24 (Docket No. 93)).  These claims, however, are not adequately pleaded to survive a motion to dismiss.  Although Plaintiff names specific positions to which she applied, she does nothing more than provide "labels and conclusions" that the failure to hire her was discriminatory, and thus fails to meet the pleading standard set by *Iqbal* and *Twombly*.  (*See, e.g. id.* ¶ 15 ("If any of the positions, currently held by the new provisional Associate Chemists . . . were publicly advertised, I applied on all of them and was discriminatory rejected."); *id.* ¶ 21 ("On 03/07/12,  I applied to the Alcohol and Drug Epidemiologist position JVN# 816-12-144771.  That was the only epidemiologist/CRS position advertised to the public.  I am fully qualified for the position, but was discriminatory rejected."); *id.* ¶ 56 ("Once again, I was discriminatorily rejected for the 06/22/12 Associate Chemist position in furtherance of the defendant's discriminatory policies and practice.")).  That is, the proposed amended pleading offers only "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

**D.  The Union Defendants' Motion to Bar Plaintiff from Filing Additional Lawsuits**

Finally, the Union Defendants move to have Plaintiff declared a vexatious litigant and to have her enjoined from filing further suit against the Union without leave of the Court.  (Union Defs.' Mem. of Law 16).  The Second Circuit has identified several factors that a court must consider in weighing whether to restrict a litigant's future access to the courts:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of

prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw v. N.Y.S. Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (quoting *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).  Applying these factors here, there is no basis to enjoin Plaintiff.  Indeed, courts have declined to enjoin litigants with far more egregious, vexatious, and harassing conduct than Plaintiff's in this case.  *See, e.g.*, *Id.* at 529 (involving a litigant who had filed over fifteen actions in federal and New York State courts, several of which had been dismissed for "frivolousness, failure to comply with the rules or orders of this Court, or lack of appellate jurisdiction" (internal quotation mark omitted)).  Further, Plaintiff has received no warning that her conduct could result in such an injunction, something the Court of Appeals has treated as a near prerequisite for restraining a litigant's future access to the courts.  *See id.* (declining to impose a bar because the appeal before the Court had been filed prior to the litigant having been warned that future frivolous litigation would result in sanctions).  Accordingly, the Court declines to sanction or enjoin Plaintiff on the basis of her filing of this lawsuit.  The Court does, however, warn Plaintiff that filing future suits based on the same facts and claims alleged here and in *Gertskis I* may result in such sanctions or an injunction.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss and for summary judgment are GRANTED, the Union Defendants' motion to declare Plaintiff a vexatious litigant and bar her from filing further lawsuits is DENIED, and Gertskis's motions to supplement the pleadings and substitute the United States as a party are DENIED.  The Clerk of the Court is directed to mail a copy of this Opinion and Order to the Plaintiff, to terminate all pending motions (Docket

Nos. 27, 39, 49, 61), and to close this case.

       SO ORDERED.

Dated: March 20, 2013
      New York, New York

                                     JESSE M. FURMAN
                            United States District Judge